IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLINT ALLEN,                    §
        Petitioner,        §
                  §
v.                              §        No. 3:22-cv-01493-D (BT)
                  §
UNITED STATES OF AMERICA,        §
        Respondent.        §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

After pleading guilty to a conspiracy to commit mail fraud, serving a custodial sentence in the Bureau of Prisons (BOP), and being released from custody, Petitioner Clint Allen filed a petition for a writ of *coram nobis* under 28 U.S.C. § 1651 (ECF No. 3), seeking to vacate or set aside his conviction, modify the restitution order, and quash a final order of garnishment. For the reasons set forth below, the District Court should deny Allen's petition for a writ of *coram nobis* and his "emergency petition" for immediate relief from the final order of garnishment (ECF No. 6).

### Background

In July 2007, Blaise Hancock purchased a home in Dallas, Texas, and obtained insurance on the property through Safeco Insurance Company (Safeco). (CR ECF No. 88 at 2-3.)[1] Allen contributed $50,000 towards the

---

[1] For purposes of this Order, "CR ECF" refers to Allen's criminal case, case number 3:10-cr-333-D-2, and "CV ECF" refers to his civil garnishment

purchase of the property. *Id.* at 2. Six months later, Allen set fire to the property, damaging the home and its contents. *Id.* at 4. Then, in February 2008, Hancock mailed a proof of loss form to Safeco claiming more than $1 million under the insurance policy. *Id.* at 5-6. Safeco later issued checks to Hancock for insurance proceeds based on the fraudulent claim. *Id.*

Hancock and Safeco failed to fully settle the insurance claim, and litigation ensued. *See* Pet. at 4-7 (ECF No. 3). Safeco became suspicious about the cause of the fire and initiated an investigation. *Id.* Ultimately, Safeco reported its suspicions to the Government, which opened its own investigation. *Id.* On December 1, 2010, a grand jury in this district returned an indictment charging Allen, Hancock, and Allen's twin brother with conspiracy to commit mail fraud, mail fraud, wire fraud, and conspiracy to use fire to commit a felony. (CR ECF No. 1.)

In August 2011, Allen pleaded guilty to conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 1349 and 1341. (CR ECF Nos. 86, 88, 105.) On November 18, 2011, the District Court sentenced Allen to 51 months' imprisonment. The District Court also ordered him to pay $294,983.01 in restitution. Allen did not appeal to the Fifth Circuit Court of Appeals, and he

---

proceedings, case number 3:12-cv-2131-B, and "ECF" refers to these writ of *coram nobis* proceedings, case number 3:22-cv-1493-D (BT).

did not file a motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255.[2]

On October 22, 2012, the United States sought, obtained, and served a writ of garnishment on MetLife, Inc. (MetLife) to enforce Allen's restitution obligation. (CV ECF No. 7.) In its answer, MetLife identified a long-term disability benefits plan belonging to Allen that paid him $1,737.00 on a semi-monthly basis. *Id.* at 2. On July 22, 2013, the District Court entered a Final Order, directing MetLife to pay 100% of Allen's disability benefits toward his restitution obligation during his term of incarceration. Thereafter, when Allen was released from prison, he contacted the United States Attorney's Office to report the following: he was no longer incarcerated in the BOP; he was currently in residential re-entry status in Pollack, Louisiana; and he needed the long-term disability benefits from MetLife for his living expenses.[3] (CV ECF No. 23 at 1.) On May 20, 2015, the District Court ordered that the amount withheld from Allen be reduced to

---

[2] Hancock attempted to appeal his conviction, and he also raised several unsuccessful collateral attacks to the judgment and order of restitution. *See United States v. Blaise Hancock*, Case No. 3:10-cr-333-D-1 (CR ECF No. 116) (denying motion for leave to file an out-of-time notice of appeal); *Hancock v. United States*, Case No. 3:12-cv-4837-D (denying § 2255 motion); *United States v. Blaise Hancock*, Case No. 3:10-cr-333-D-1 (CR ECF No. 135) (denying motion to amend restitution and forfeiture calculations); (CR ECF No. 162) (denying request for relief from garnishment).

[3] *See* https://www.bop.gov/inmateloc/ (last visited July 27, 2023) (the BOP inmate locator reflects that Allen was released from custody on September 14, 2015).

25% of the payments. *Id.* at 2. Allen did not claim any exemptions, appeal the District Court's garnishment order, or otherwise seek any relief from the judgment in the garnishment case.

More than seven years later, on July 11, 2022, Allen filed a petition for a writ of *coram nobis*, in which he argues that the District Court should vacate or set aside the judgment, quash the writ of garnishment, correct the amount of restitution, and return any overpayment. In support of these requests, Allen contends that, at the time of his conviction, he was suffering with mental illness: schizophrenia and bipolar disorder. Allen further contends that his attorney's representation was so inadequate it deprived him of his Sixth Amendment right to counsel. Then, on August 30, 2022, Allen also filed an "Emergency Petition" (ECF No. 6) seeking to end the "unjustified" increase to his monthly withholding by the United States. *Id.* at 1. The Government filed a response, and Allen replied. The matter is thus ripe for adjudication.

### Legal Standards

A writ of *coram nobis* is "an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction[.]" *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (quoting *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir.1996)); *see also United States v. Hatten*, 167 F.3d 884, 887 n.6 (5th Cir.

1999) (citing *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994)). A petitioner must show that a fundamental error justifies vacating his conviction and that sound reasons exist for his delay in seeking earlier relief. *See United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (*coram nobis* will issue only to correct errors of "the most fundamental character" and "sound reasons" must exist for failure to seek appropriate relief earlier) (quoting *United States v. Morgan*, 346 U.S. 502, 511-12 (1954)). A petitioner must also show that the error challenged is of a sufficient magnitude to justify the extraordinary relief sought—a "complete miscarriage of justice." *Jiminez*, 91 F.3d at 768 (citing *Castro*, 26 F.3d at 557); *see also Esogbue*, 357 F.3d at 535. A writ of *coram nobis* is only available when "no other remedy may be available." *See United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989); *see also Dyer*, 136 F.3d at 422. The Supreme Court has noted that it "is difficult to conceive of a situation in a federal criminal case today where [the writ] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996). The writ of *coram nobis* should "not be used as a substitute for appeal and should only be employed to correct errors 'of the most fundamental character.'" *Dyer*, 136 F.3d at 422 (quoting *Morgan*, 346 U.S. at 512); *see also Esogbue*, 357 F.3d at 535. A writ of *coram nobis* also cannot be used to "override" § 2255's statute of limitations or to "circumvent" the restrictions it imposes on unauthorized, successive motions. *Frasier v. United States*, 343 F. App'x 985, 986 (5th Cir. 2009) (per

curiam). "In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct." *Dyer*, 136 F.3d at 422.

## Analysis

A. Allen waived the right to bring his claims in a collateral proceeding.

In the Fifth Circuit, courts consider a petition for a writ of *coram* nobis in light of any appellate waiver contained in the petitioner's plea agreement. *See Hinkson v. United States*, 2022 WL 686325, at *2 (5th Cir. Mar. 8, 2022) (per curiam) (explaining that while an appellate-rights waiver is most often associated with seeking habeas corpus relief, "it applies with the same force to the substantially similar writ of *coram nobis*").

Here, Allen's plea agreement included the following waiver provision:

> Allen waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal from his conviction and sentence. He further waives his right to contest his conviction and sentence in any collateral proceeding, including proceedings under 28 U.S.C. § 2241 and 28 U.S.C. § 2255. Allen, however, reserves the rights (a) to bring a direct appeal of (i) a sentence exceeding the statutory maximum punishment, or (ii) an arithmetic error at sentencing (b) to challenge the voluntariness of his plea of guilty or this waiver, and (c) to bring a claim of ineffective assistance of counsel.

(CR ECF No. 86 at 4). And, as discussed below, Allen fails to demonstrate that this appellate-rights waiver in his plea agreement is invalid. Therefore, the waiver provision bars his petition for *coram nobis* relief.

Further, even if Allen's appellate-rights waiver did not bar his petition for *coram nobis* relief, the petition fails on the merits because he fails to demonstrate the required elements necessary to issue a writ of *coram nobis*. *See Langston v. United States*, 2016 WL 800210, at \*14 (N.D. Miss. Feb. 29, 2016). The requisite elements for *coram nobis* relief are: (1) the ground for relief involves a fundamental error; (2) no other judicial remedy is available; (3) valid reasons exist to excuse the petitioner's failure to seek relief on these issues in earlier proceedings; and (4) the petitioner is suffering or is threatened with adverse collateral consequences as a result of his conviction. *Id.*

B. <u>Allen's ineffective assistance of counsel claims are belied by the record, lack supporting evidence, and are meritless.</u>

Allen argues that his trial attorney (1) provided deficient performance in several respects; (2) he was prejudiced by his attorney's representation; (3) and his conviction should be vacated. *See* Pet. 12-13 (ECF No. 3). Specifically, Allen contends that his trial attorney was not admitted to practice in federal court, failed to seek a competency hearing or have Allen's mental competency evaluated, failed to participate with the presentence interview, failed to explain the provisions of the plea agreement, and encouraged Allen to plead guilty even though he maintained his innocence. *See id.* at 10-13.

The Fifth Circuit "has held that ineffective assistance of counsel, if proven, can be grounds for *coram nobis* relief." *Esogbue,* 357 F.3d at 534-35 (citing *Castro,* 26 F.3d at 559-560) (reversing the court's denial of a *coram nobis* petition and remanding for a determination of whether counsel provided ineffective assistance by failing to properly advise the defendant). To prevail on a claim of ineffective assistance of counsel, a movant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Hinkson,* 2022 WL 686325, at *3 (citing *Strickland v. Washington,* 466 U.S. at 668, 687 (1984)).

In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Allen's claims fail because they are belied by his statements at the rearraignment hearing and at sentencing. *See* Tr. 8 (CR ECF No. 169) (representing, under oath, that he was "fully satisfied with [his] attorney and the representation and advice given [him] in the case by [his] attorney"); *see* Tr. 4 (ECF No. 170) (representing, under oath, that he "had sufficient time to read and discuss the presentence report and the addenda with [his] attorney"). "Solemn declarations in open court carry a strong presumption

of verity," which create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001); *Wilkes*, 20 F.3d at 653. In the Fifth Circuit, courts afford great weight to a defendant's statements at the plea colloquy. *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002). Absent independent and reliable evidence of the likely merit of his allegations, a prisoner "will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985)). A presumption of regularity is bestowed upon court documents, and for this reason, they are accorded great weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (stating a signed, unambiguous plea agreement is accorded great evidentiary weight when determining if a guilty plea is knowing and voluntary); *see also Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (recognizing an official state record is accorded "great weight") (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).

Allen's claims also fail because he has not provided any evidence in support of the errors he raises. *See United States v. Gonzalez*, 139 F.3d 899, 1998 WL 127868, at *2 (5th Cir. 1998) (per curiam) (recognizing when a movant brings a claim that is at odds with his sworn testimony, he must independently corroborate his allegations). While it is well-established that

*pro se* pleadings are liberally construed, this does not suggest a court should consider a bald assertion on a critical issue. *See Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.") (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983)). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

And even if addressed on the merits, Allen's ineffective assistance of counsel claims fail under the two-pronged *Strickland* test.

1. Failure to be admitted

Allen argues that his trial attorney was "an influential and outspoken lawyer in and around Dallas and surrounding counties," but he provided ineffective assistance of counsel because he was not admitted to practice in federal court. Pet. 8 (ECF No. 3); *see also* Reply 1-2 (ECF No. 12). Allen further argues that his attorney "failed to disclose [to Allen] that he was not admitted to practice in federal court." Pet. 8 (ECF No. 3). Allen concludes that his attorney's failure to gain admission in federal court was "not remedied upon being retained," and his attorney "remained unauthorized to represent Allen in this matter." *Id.*

The Fifth Circuit has declined to apply a *per se* ineffectiveness rule to situations where an attorney lacks the proper credentials. *Ybarra v. Quarterman*, 200 F. App'x 341, 342 (5th Cir. 2006) (per curiam); *see also United States v. Maria-Martinez*, 143 F.3d 914, 916 (5th Cir. 1998) (declining to adopt *per se* rules relating to deficiencies in an attorney's bar membership); *United States v. McKinney*, 53 F.3d 664, 675 (5th Cir. 1995) (The attorney was not duly licensed to practice law because of a failure to meet the substantive requirements for the practice of law, but there was no Sixth Amendment violation where the attorney was adequately credentialed to practice law before the federal court.). Rather, the Fifth Circuit has held that "the key to adequate representation is not technical license to practice in the jurisdiction involved, but a credential from *some* forum demonstrating the specialized knowledge of a lawyer." *Maria-Martinez*, 143 F.3d at 917 (emphasis in original); *see also United States v. Williams*, 934 F.2d 847, 852 (7th Cir. 1991) (declining to apply a *per se* rule about an attorney's credentials, and instead, requiring actual errors by counsel and omissions that prejudiced the defense).

The Government represents that public records from the State Bar of Texas demonstrate Allen's trial attorney has been a member of the Texas bar since 1988, and he reported no public record of any disciplinary history from any jurisdiction. Resp. 14 n.4 (ECF No. 9) (citing https://www.texasbar.com); *see also Morgensen v. Downey Savings &*

*Loan Assoc.*, 2016 WL 234430, at *2 n.5 (taking juridical notice of the State Bar of California's website records to show which attorneys were active licensed members). Indeed, Allen concedes that his attorney "was in good standing with the Texas Bar at the time." Reply 2 (ECF No. 12). And as the Government points out, Allen's attorney was later admitted *pro hac vice* in another criminal matter in the Northern District of Texas. Resp. 14 n.5 (ECF No. 3) (citing *United States v. Bullard*, Case No. 3:14-cr-325 (ECF No. 12) (N.D. Tex. Sept. 25, 2014)).

Allen further concedes that his attorney was a former Dallas County prosecutor, and he believed this made the attorney capable of handling his representation. Pet. 7 (ECF No. 3). But even if his attorney was not admitted to practice in federal court, the attorney had "a credential from *some* forum demonstrating the specialized knowledge of a lawyer," and that credential was sufficient for him to provide constitutionally sufficient representation under the Sixth Amendment. *See Maria-Martinez*, 143 F.3d at 917 (emphasis in original). Moreover, "[i]t is inconceivable that the failure to take this purely formal step [to be admitted in federal court] caused any prejudice to [the petitioner]." *United States v. Bradford*, 238 F.2d 395, 397 (2d Cir. 1956).

Allen has failed to show deficient performance or prejudice. This claim fails under both prongs of the *Strickland* standard, and the District Court should deny it.

2. Failure to address Allen's competency

Next, Allen argues that he was not competent to enter a guilty plea and suffered with a "diminished capacity." Pet. 8 (ECF No. 3). Allen further argues that his attorney provided ineffective assistance of counsel by failing to have his mental health conditions properly assessed and failing to raise them at sentencing. *Id.* at 8, 12. Allen concludes that because his attorney failed to properly address his mental health conditions, it amounted to a denial of his right to a "zealous advocate" under the Sixth Amendment. *Id.* at 8.

Allen's diminished capacity argument is belied by the record because it is inconsistent with Allen's admission that he had the capacity to "immediately note[ ] several factual inaccuracies [in the plea offer] so [he] began correcting the plea." *Id.* at 10. Moreover, Allen has also failed to demonstrate prejudice. Under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also United States v. Israel*, 838 F. App'x 856, 863 (5th Cir. 2020) (per curiam) (to show prejudice under *Strickland*, a movant must demonstrate a reasonable probability that he was incompetent, and it was enough to undermine confidence in the outcome of his proceedings). A petitioner must "affirmatively prove," not just allege,

prejudice. *Strickland*, 466 U.S. at 693. And if a petitioner fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697; *see also Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995) ("[A] court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test."). Allen does not show that—if his attorney had requested a competency hearing—he would have been found incompetent or his attorney otherwise would have obtained evidence beyond the record to demonstrate he was incompetent. Allen has not shown prejudice because he has failed to show a reasonable probability that but for his attorney's deficient performance, the result of his proceedings would have been different. *See Strickland*, 466 U.S. at 694.

The record shows that the District Court was well-aware of Allen's mental health conditions. For instance, at his rearraignment hearing, the District Court inquired about his mental health conditions, independently assessed his mental capacity, addressed his ongoing medication regimen and possible side effects having a mental impact, and inquired whether he was able to assist counsel with his case. (CR ECF No. 169 at 5-7, 21.) Ultimately, the District Court concluded that Allen was "fully competent and capable of entering an informed plea" and accepted his guilty plea to count one of the indictment. (CR ECF No. 169 at 20.) Moreover, Allen's health conditions and medications were also documented in the Presentence

Report (PSR) and available to the District Court prior to sentencing. *See* PSR ¶¶ 69-72 (addressing his physical conditions, including HIV, Hepatitis C, pancreatitis, high blood pressure, gout, and medication side effects, such as suicidal thoughts and insomnia); PSR ¶¶ 73-74 (addressing mental and emotional health conditions, including a history of mental and emotional problems such as depression, anxiety, and bipolar); (CR ECF No. 107) (adopting the PSR "without change"); *see also* Reply 10 (ECF No. 12) (Allen claims the PSR was incomplete because it failed to include a diagnosis of disabling schizophrenia).

Allen's inability to show prejudice is also evident from Allen's statements at sentencing. As discussed, Allen accepted "full responsibility" for his crimes, and he asked the District Court to show "mercy." (CR ECF No. 170 at 11.) These statements are inconsistent with the *post hoc* allegations contained in his petition suggesting he lacked an understanding of the nature and object of the proceedings against him when he pleaded guilty. *See Israel*, 838 F. App'x at 864-867 (finding the movant's ineffective assistance of counsel claim alleging counsel's failure to move for a competency examination and hearing failed under *Strickland* because he failed to show prejudice).

Allen has failed to show prejudice. Thus, this claim fails under the *Strickland* standard, and the District Court should deny it.

3. Failure to participate at sentencing

Allen next argues that his trial attorney "did not fully participate" at sentencing. Pet. 12 (ECF No. 3). Specifically, Allen contends that his attorney did not understand the importance of the presentence interview, and he failed to attend the interview. Reply 6 (ECF No. 12).

There is no right to counsel during a presentence interview with a probation officer. *United States v. Kinsey*, 917 F.2d 181, 183 (5th Cir. 1990); *see also Hott v. United States*, 2020 WL 7395384, at * (N.D. Tex. Dec. 17, 2020) ("A defendant has no right to counsel at a presentence interview."). This is because a presentence interview with a probation officer is not considered a critical stage of the proceedings for purposes of the Sixth Amendment, where counsel's presence or advice is necessary to protect the defendant's right to a fair trial. *See United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir. 1990) (citing *Brown v. Butler*, 811 F.2d 938, 940–41 (5th Cir. 1987)). A defendant's right to effective assistance of counsel cannot be violated where there is no constitutional right to counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *see also Woods*, 907 F.2d at 1543 (citing *Brown*, 811 F.2d at 941).

Because Allen did not have a constitutional right to counsel at his presentence interview with the probation officer, Allen cannot have been deprived of effective assistance of counsel. *Woods*, 907 F.2d at 1543 (5th Cir. 1990) (citing *Wainwright*, 455 U.S. at 587-88).

Furthermore, the record shows that Allen's attorney otherwise participated in Allen's sentencing. He submitted several character letters to the District Court in advance of sentencing, attended the sentencing hearing, and even called Allen's siblings as witnesses to testify at the hearing. *See generally* (CR ECF No. 170). Any claim that Allen's attorney did not participate in sentencing is belied by the record.

Allen has failed to show deficient performance or prejudice. This claim fails under both prongs of the *Strickland* standard, and the District Court should deny it.

4. Failure to show his plea was uninformed and involuntary

Allen argues that his attorney provided ineffective assistance of counsel when he failed to fully inform him of the details of his plea agreement, including the fact that he would be waiving his right to appeal and would be open to liability for restitution. Pet. 11-12 (ECF No. 3). Allen further argues that his attorney led him to believe that there would be a "bench trial." *Id.* at 10.

This claim is belied by Allen's statements at his rearraignment hearing. At his rearraignment hearing, Allen informed the District Court of the following: (1) he "had sufficient time to read and study" the plea documents; (2) he declined to make any changes or corrections; and (3) he waived his right to have the plea documents read aloud in open court. *See* (CR ECF No. 169 at 8-10).

Even if the Court assumes that Allen's allegations are true, and his attorney provided deficient performance, Allen has failed to show prejudice. *See Strickland*, 466 U.S. at 694 (to show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). At Allen's rearraignment hearing, the District Court advised him of his right to a jury trial—specifically informed him a jury had been impaneled for a trial to start the following week--and advised him that his guilty plea would waive those rights. (CR ECF No. 169 at 10-12.) Allen also admitted under oath that (1) he understood the charge against him; (2) he understood the consequences of pleading guilty, which included the restitution provision; and (3) his guilty plea was freely and voluntarily made. *Id.* at 13-14. Allen confirmed that he understood he would forfeit certain rights by pleading guilty, such as the right to appeal his conviction. *Id.* at 16-17. Allen's formal declarations in open court carry a strong presumption of truth, which form a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). For these reasons, Allen's plea was knowing and voluntary. *See Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986).

Allen has failed to show prejudice. This claim fails under the prejudice prong of the *Strickland* standard, and the District Court should deny it.

18

5. Actual Innocence

Allen alleges that he is actually innocent of the mail fraud conspiracy. Pet. 8-9, 13 (ECF No. 3). Allen does not suggest his attorney overlooked important evidence or failed to investigate evidence that would have shown he was innocent. *See id.* at 1-21. Instead, he alleges that he has an identical twin brother, and he intimates that his brother, Clay, was somehow involved with the arson and insurance fraud and then cooperated with the Government to secure Allen's conviction. *Id.* at 8-9; *see also* Reply 7 (ECF No. 12). Allen concludes that there was "no direct physical evidence of arson." Pet. 8 (ECF No. 3)

"[I]n a guilty plea scenario, a [petitioner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52 (1985)); *see also United States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008) ("In order '[t]o prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Bond v. Dretke*, 384 F.3d 166, 167-68 (5th Cir. 2004)).

Once again, Allen's *post hoc* allegations are belied by the record. Allen pleaded guilty to mail conspiracy fraud. At sentencing, he fully accepted

responsibility for his involvement in the crime, stating, "Your Honor, I stand before you a remorseful person for the act or acts that have brought me here before you today. I take full responsibility. And as I stated previously, am very remorseful. I ask for your mercy and appreciate sincerely your consideration." (CR ECF No. 170 at 11.) And in Allen's petition, he concedes that prior to his guilty plea, he was aware he was pleading guilty to a "conspiracy charge." Pet. 12-13 (ECF No. 3).

Allen cannot demonstrate prejudice under *Strickland. See Hill*, 474 at U.S. at 52; *see also Cavitt*, 550 F.3d at 441; *Armstead*, 37 F.3d at 206. Allen argues that several eyewitnesses who testified at his trial were unreliable, Pet. 8-9 (ECF No. 3), but he has failed to present any evidence suggesting he can now demonstrate "factual innocence" in the post-conviction context. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.").

C.   Allen has not shown he is suffering from a civil disability.

Even if Allen could show that his trial attorney provided ineffective assistance of counsel, Allen must still demonstrate he suffered from civil disabilities. "The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction." *Esogbue*, 357 F.3d at 534 (quoting *Jimenez*,

91 F.3d at 768); *see also United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989) (citing *Puente v. United States*, 676 F.2d 141 (5th Cir.1982); *United States v. Hay*, 702 F.2d 572 (5th Cir.1983)). Where a restitution obligation is "imposed as part of [the] sentence" it does not amount to a "continuing civil disability" that warrants *coram nobis* relief. *United States v. Stone*, 2017 WL 10409815, at *3 (N.D. Tex. Oct. 13, 2017) (citing *United States v. Sloan*, 505 F.3d 685, 697-98 (7th Cir. 2007)). A financial oblation resulting from a criminal conviction is insufficient to warrant *coram nobis* relief. *Id.* at *3; *see also Cluck v. United States*, 2015 WL 13357598, at *3 (W.D. Tex. Sept. 21, 2015) (recognizing complaints about restitution are insufficient evidence of a civil disability).

Even with the liberal construction due *pro se* pleadings, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), Allen's petition fails to allege, much less demonstrate, he is suffering from a specific continuing disability that warrants *coram nobis* relief. Allen outlines several financial challenges he has faced because of his criminal conviction and restitution obligation, such as the foreclosure of his residence in Lewisville, Texas, the garnishment of his disability benefits, and his inability to litigate the ownership of property held by his twin brother, Clay, who died from a drug overdose. Pet. 17-19 (ECF No. 3). However, each of these financial challenges Allen has faced amount only to a financial injury rather than a continuing civil disability, which is required for *coram nobis* relief. *See Esogbue*, 357 F.3d at

534. Allen has not demonstrated he is entitled to *coram nobis* relief, and his petition should be denied.

D. Allen has failed to show he sought prompt relief, and he had alternative remedies available.

Allen's petition should be denied because he has not shown that he promptly sought relief, and he has not demonstrated alternative remedies were not available to him. A petitioner seeking *coram nobis* relief must show he "exercise[d] 'reasonable diligence in seeking prompt relief.'" *Chico v. United States*, 703 F. App'x 292, 293 (5th Cir. 2017) (per curiam) (quoting *United States v. Dyer*, 136 F.3d 417, 427 (5th Cir. 1998) (an "equitable requirement[ ] that we have imposed upon petitioners who request the 'extraordinary remedy' of coram nobis" is that they "act with reasonable diligence in seeking relief")). And "[b]ecause there is no applicable statute of limitations for a writ coram nobis, a district court considering the timeliness of a petition 'must decide the issue in light of the circumstances of the individual case.'" *Chico*, 703 F. App'x at 294 (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)). *Coram nobis* relief cannot issue without there being "sound reasons" for petitioner's failure to seek relief earlier. *See Dyer*, 136 F.3d at 422 ("The writ will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'") (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)).

The District Court sentenced Allen on November 18, 2011, but Allen did not file his petition for *coram nobis* relief until July 11, 2022--almost eleven years later. Allen did not file a direct appeal, and he did not collaterally attack his conviction. Allen argues that he suffers with bipolar disorder and schizophrenia and "only recently became aware of his rights having been denied with the assistance of a caretaker." Reply 2 (ECF No. 12). But this statement, without any evidentiary support, is legally insufficient to explain why he waited almost eleven years to seek *coram nobis* relief. Thus, without any evidence to the contrary, Allen's claims addressing ineffective assistance of trial counsel were available to him long before he presented them.

In sum, Allen waited almost eleven years to file his petition for *coram nobis* relief, and he has failed to show that he exercised diligence in filing his petition for *coram nobis* relief. *See Dwyer*, 136 F.3d at 427 (a petitioner seeking *coram nobis* relief must act with "reasonable diligence"); *see also Chico*, 703 F. App'x at 293-94 (The petition was filed approximately two years after she became aware of her claims, and the Fifth Circuit affirmed the denial of her petition on the basis that she "failed to demonstrate reasonable diligence"). The District Court should deny his petition.

E.    Allen has not shown a complete miscarriage of justice.

Allen's petition also fails because he has not shown a complete miscarriage of justice. A writ of *coram nobis* "will issue only to correct errors

23

resulting in a complete miscarriage of justice." *Esogbue*, 357 F.3d at 534 (quoting *Jimenez v. Trominiski*, 91 F.3d 767, 768 (footnote omitted)). When the claims set forth in a petition for writ of *coram nobis* were raised or could have been raised in a prior habeas action, the petitioner has not demonstrated "a complete miscarriage of justice." *United States v. Kessler*, 335 F. App'x 403, 404 (5th Cir. 2009) (per curiam) (citing *Esogbue*, 357 F.3d at 535). When a petitioner fails to make the requisite showing of a complete miscarriage of justice, the district court does not abuse its discretion by denying *coram nobis* relief. *United States v. Calzada*, 2023 WL 2010750, at *1 (5th Cir. Feb. 15, 2023) (per curiam) (citing *Esogbue*, 357 F.3d at 535).

Allen's claims could have been raised in a timely motion to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. And because Allen's claims could have been raised in a prior habeas action, he has not demonstrated "a complete miscarriage of justice." *Kessler*, 335 F. App'x at 404 (concluding a petitioner fails to show a compete miscarriage of justice because his claims were raised, or could have been raised, in his prior federal habeas actions); *see also Esogbue*, 357 F.3d at 535. The District Court should deny his petition.

F.    The District Court should deny Allen's request to modify the restitution order.

Allen also requests the Court to issue a writ of *coram nobis* to "correct the amount of restitution." Pet. 1, 20 (ECF No. 3). In 1996, Congress enacted

the Mandatory Victims Restitution Act (MVRA), which made restitution mandatory in certain cases, such as crimes of violence and theft with identifiable victims who "suffered a physical injury or pecuniary loss." *United States v. Owusu*, 2021 WL 3854769, at *3 (5th Cir. Aug. 27, 2021) (quoting 18 U.S.C. § 3663A(c)(1)). However, "[o]nce the sentencing judge imposes a defendant's sentence, the district court has limited authority to revisit that sentence, and its authority must derive from a specific statute or rule." *United States v. Rooney*, 2014 WL 3865974, at *3 (N.D. Tex. Aug. 6, 2014) (J. Fitzwater) (citing *United States v. Fromm*, 2014 WL 2864710, at *2 (N.D. Ill. June 18, 2014); *United States v. Goode*, 342 F.3d 741, 743 (7th Cir.2003)). An order, as a part of a defendant's sentence, is a final judgment, and it can only be modified under "limited circumstances." *Id.*; *see also* 18 U.S.C. § 3664(o) (stating a sentence that imposes a restitution order is a final judgment, and it can be amended only in limited circumstances). A court can "adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). Under the MVRA, the court can make a downward adjustment of the restitution order under Federal Rule of Criminal Procedure 35 or a direct appeal under 18 U.S.C. § 3742. *United States v. Singh*, 2020 WL 4192899, at *2 (E.D. Tex. July 20, 2020). "A district court lacks jurisdiction to modify a restitution order under § 2255, a writ of coram nobis, or 'any other federal law.'" *Campbell v. United States*, 330 F. App'x 482, 483 (5th Cir. 2009) (per curiam) (quoting *United States*

*v. Hatten*, 167 F.3d 884, 887 n.5 (5th Cir. 1999); *United States v. Segler*, 37 F.3d 1131, 1135 (5th Cir. 1994)).

The District Court lacks jurisdiction to "correct" the restitution order, and it should deny his request to modify the amount of restitution he owes.

G.   Allen is not entitled to an evidentiary hearing.

Allen has failed to demonstrate that he is entitled to an evidentiary hearing because the briefing conclusively shows that he is not entitled to *coram nobis* relief. A district court is not required to conduct an evidentiary hearing where the petitioner's allegations are contradicted by the record, or his claims are frivolous. *Cf.* 28 U.S.C. § 2255(b) (no hearing is necessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). When a petitioner is not entitled to *coram nobis* relief, a district court does not abuse its discretion by denying the petition without conducting an evidentiary hearing. *United States v. Yadigarov*, 840 F. App'x 487, 491 (11th Cir. 2021) (per curiam).

Allen's claims are barred by the appellate-rights waiver in his plea agreement, they lack merit, and they fail to meet the requisite elements for *coram nobis* relief. Allen is not entitled to any relief on his petition, and for the same reason, he is not entitled to an evidentiary hearing. *See id.*

H. <u>The Court should deny Allen's request to quash the final garnishment order or cease garnishment</u>.

Last, Allen argues contends there are several deficiencies in his related civil garnishment case, and he asks the District Court to quash the final order of garnishment due to these alleged deficiencies. Pet. 1, 14-18, 20 (ECF No. 3) (seeking to "immediately quash the Writ of Garnishment"). Allen also filed a separate "Emergency Petition" (ECF No. 6), in which he moves for an end to the "unjustified" increase to the monthly withholding by the United States for garnishment to enforce his criminal restitution obligation. *Id.* at 1.

In support of his Emergency Petition, Allen argues that when the District Court issued an order to show cause on July 13, 2022, the Government responded by contacting MetLife and stating it was not in compliance with the District Court's order of garnishment by failing to withhold payments to Allen for the last seven years. Allen further argues that the Government demanded MetLife immediately initiate garnishment from him in an amount more than three times the amount being withheld at the time. Allen contends that it is no accident the Government's action occurred within weeks of his challenge to his conviction, and the Government's action is at best "reactionary and at worst retaliatory." *Id.* at 2. Allen concludes that "[w]ithout intervention from the Court this, along with the hyper-inflation

currently gripping our economy will leave the petitioner unable to support his family and meet his monthly living obligations." *Id.*

The Federal Rules of Civil Procedure apply to garnishment proceedings. *See U.S. ex rel. McCandliss v. Sekendur*, 631 F. App'x 447, 449 (7th Cir. 2015) (citing 28 U.S.C. § 3003(f)). Because a final order of garnishment is distinct from a criminal judgment, it must be challenged separately. *See United States v. Onyeri*, 996 F.3d 274, 281-83 (5th Cir. 2021) (a judgment debtor "may not use a garnishment proceeding to challenge the underlying judgment and restitution order in his case") (citing *United States v. Goyette*, 446 F. App'x 718, 720 (5th Cir. 2011) (per curiam)). A party attempting to vacate a civil judgment can seek relief under Federal Rule of Civil Procedure 60. *See* Fed. R. Civ. P. 60(b). But the vacatur of a civil judgment cannot be sought through a petition for writ of *coram nobis*, which "is a step in a *criminal* case." *United States v. Morgan*, 346 U.S. 502, 505 n.4 (1954) (emphasis added) (citing *Kurtz v. Moffitt*, 115 U.S. 487, 494 (1885)). Rule 60 recognizes that the writ of *coram nobis* has been abolished. Fed. R. Civ. P. 60(e); *see also Morgan*, 346 U.S. at 506 (stating the writ of *coram nobis* is available under the All Writs Act, 28 U.S.C. § 1651(a)).

The final order of garnishment in Allen's garnishment proceedings is separate and distinct from the judgment entered in his criminal case. *See Onyeri*, 996 F.3d at 281-83. And for this reason, Allen's request to immediately stop the increase to the District Court's garnishment order

through a writ of *coram nobis*, a step taken in his criminal case, is not legally permissible. *See Morgan*, 346 U.S. at 505 n.4.

And the extent to which Allen's Emergency Petition could be construed as an independent Rule 60(b) motion seeking relief from the garnishment order, it fails for at least two reasons. First, an independent Rule 60(b) motion would fail because it was not timely filed. Under Rule 60(c)(1), a party must file a Rule 60(b) motion within a reasonable time or show good cause for the delay.[4] *In re Edwards*, 865 F.3d 197, 208 (5th Cir. 2017) (citing *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)). "'Good cause' for a reasonable delay must be 'evaluated on a case-by-case basis.'" *Id.* (quoting *In re Osborne*, 379 F.3d at 283). Timeliness is assessed when the moving party has a basis to make such a motion, not the time that has passed since judgment was entered. *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992). "Once a party has grounds to make a Rule 60(b) motion, however, he must bring the motion reasonably promptly, though 'the determination of reasonableness is less than a scientific exercise.'" *In re Edwards*, 865 F.3d at 208-09 (quoting *First RepublicBank Fort Worth*, 958 F.2d at 121). When a moving party fails to appeal, and the grounds for relief were known within the time to file an

---

[4] All motions under Rule 60(b) must be filed within a "reasonable time." Fed. R. Civ. P. 60(c)(1). However, Rule 60(b) motions filed for the reasons set forth in Rule 60(b)(1)-(3) must be filed "no more than a year after the entry of the judgment or order or the date of the proceeding." *Id.*

appeal, "the usual time period for direct appeal presumptively delimits, as a matter of law, the 'reasonable time' contemplated by Rule 60[(c)]." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir. 1985). The District Court should not allow a party to use Rule 60(b) as an end run around appeal time limits. *Id.*

The Court entered the amended final order of garnishment on May 20, 2015. (CV ECF No. 23.) Allen filed his Emergency Petition *more than seven years later*—on August 30, 2022. (ECF No. 6.) As mentioned, Allen did not appeal the District Court's garnishment order, and he did not otherwise move for any relief from the judgment in his garnishment case.

Second, even if Allen's Emergency Petition could be construed as a timely Rule 60(b) motion, it would fail on the merits because he has not demonstrated he is entitled to relief. Under Rule 60(b), a court may relieve a party from a final judgment or order for the following reasons:

(1)  mistake, inadvertence, surprise, or excusable neglect;

(2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)  the judgment is void;

(5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is considered an extraordinary remedy, and the need for predictability mandates caution in reopening judgments. *In re Pettle*, 410 F.3d 189, 191 (5th Cir. 2005). The movant bears the burden of establishing at least one of the Rule 60(b) requirements to obtain relief. *Harrison v. Baylor Univ. Med. Ctr.*, 2018 WL 7048085, at *2 (N.D. Tex. Dec. 21, 2018), *accepted by* 2019 WL 202325 (N.D. Tex. Jan 15, 2019).

Allen has failed to demonstrate a mistake in his garnishment judgment. Rather, Allen merely argues that the District Court should put a stop to the sudden increase in the monthly withholding for garnishment by the Government. Allen further argues that this sudden increase occurred within mere weeks of him challenging his criminal conviction, and it amounts to a "reactionary" or "retaliatory" response. (ECF No. 6 at 2.) Allen concludes that the District Court should intervene so that he can support his family and meet his personal living obligations. But Allen has failed to show there was any mistake in the judgment in his garnishment case or any other reason to grant relief from the judgment. Consequently, a Rule 60(b) motion would fail on the merits.

## Recommendation

The District Court should DENY Allen's petition for a writ of *coram nobis* (ECF No. 3) and his "Emergency Petition" to cease garnishment (ECF No. 6).

Signed August 1, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).